**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EMANUEL DUNN, JR.<br><br>                              Petitioner,<br><br>v.<br><br>R. JOHNSON, Warden, et al.,<br><br>                              Respondents. | Case No. 3:20-cv-00127-GPC-JLB<br><br>**ORDER: (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS; and (2) DENYING CERTIFICATE OF APPEALABILITY** |

**I.  INTRODUCTION**

Petitioner Emanuel Dunn, Jr. is a state prisoner proceeding pro se with a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition" or "Pet."). Dunn challenges his conviction for second degree murder in San Diego Superior Court case no. SCD264080. The Court has read and considered the Petition, [ECF No. 1], the Answer and Memorandum of Points and Authorities in Support of the Answer [ECF No. 4, 4-1], the lodgments and other documents filed in this case, and the legal arguments presented by both parties. For the reasons discussed below, the Court **DENIES** the Petition and **DISMISSES** the case with prejudice. The Court also **DENIES** a Certificate of Appealability.

/ / /

/ / /

## II. FACTUAL BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1) (West 2006); *see also Parle v. Fraley*, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from these facts, are entitled to statutory presumption of correctness). The state appellate recounted the facts as follows:

*Prosecution Evidence*

During the morning of June 14, 2015, a woman found Mark Preville lying in a Paradise Hills condominium complex carport, motionless and bleeding from his head and nose. Another individual had seen nothing unusual in the carport about a half hour earlier. Preville was not breathing. The woman called police, who on arriving found Preville's jacket and blood-spattered pages from a June 9, 2015 "Final Call" newspaper in the parking stall near his body. Preville had a black glove on his right hand and a splint on his left hand. Paramedics pronounced him dead. Four days earlier, Preville had been hospitalized after he reported being struck in the head with a baseball bat, but doctors did not diagnose any injuries and he was released in stable condition. On June 13, 2015, the day before Preville's body was found, a police officer arrested and cited Preville after he had an altercation with a security guard and threatened another transient, as well as an officer, at a downtown park. The officer then released Preville; he did not observe any injuries on Preville's head or face that day.

Preville's death was determined to be blunt force injury to the head by homicide. He had skull fractures and multiple impact injuries to his face and mouth, as well as rib fractures, and minor abrasions to his arms and legs. He had nonfatal puncture wounds to his face and neck. He had a blood-alcohol concentration of .17 percent and blood concentration of .25 milligrams per liter of methamphetamine, and trace amounts of substances indicating marijuana use. Detectives believed that Preville was beaten and killed elsewhere and his body dumped in the carport afterwards.

About nine days after Preville's body was found, police patrolling the mid-city area of San Diego at about 3:00 in the morning contacted Dunn and Cynthia Perez, who were inside a parked Cadillac registered to Dunn. The

officers were not aware at the time that Dunn was a suspect in Preville's homicide.

By early August, criminalists had determined that Dunn's right thumb print was on a page of newspaper found by Preville's body. [footnote 2 omitted.] This led police to locate Dunn's Cadillac, which had been repossessed on June 29, 2015. Repossession agents found bleach, air freshener, detergent, cologne, window cleaner and spray deodorant, among other items in the car. Pages from a June 16, 2015 Final Call newspaper were found in the vehicle. Criminalists found blood transfer stains and bleach stains in the Cadillac, predominantly its left rear passenger side, and evidence that someone had tried to clean the backseat and rear passenger doors. Two of the seat belts were soaked in blood. A criminalist concluded based on DNA tests that the blood was Preville's; that Preville transported in the vehicle bleeding or bloody, but did not sustain his injuries inside it. [footnote 3 omitted.]

An expert determined that Dunn was a minor contributor to DNA found on Preville's shirt and gloves, the splint on his left hand, and a rubber wristband on his wrist. Dunne's DNA was found in fingernail scrapings taken from Preville's right hand. Cell phone records and the global positioning system (GPS) tracker from Dunn's vehicle showed that Dunn's phone and vehicle were generally in the same place; on the late evening of June 13, 2015, to the early morning of June 14, 2015, Dunn's phone activated sites in the Bonita area, then in downtown San Diego. At about 7:30 a.m. on June 14, 2015, there were four activations from Dunn's phone in the area of his father's Shorewood Drive house, where Dunn sometimes stayed. The Shorewood Drive house is about a mile and a half from the Paradise Hills condominium complex. During the 10:00 hour that morning, Dunn's phone activated a site about 1.25 miles from the Paradise Hills complex. Dunn's phone showed no activity from 4:00 to 7:00 that morning.

*Defense Evidence*

Dunn presented evidence of Preville's prior aggression toward others as well as Preville's reports to police that he had been attacked by other individuals, including Rudy Wells, a former gang member known as "Shorty." On June 10, 2015, Preville reported to police that Shorty had assaulted him with a baseball bat and took his wallet containing $200. An officer observed that paramedics had already bandaged Preville, who had welts on his head. Preville told the officer he wanted to see Wells arrested and press charges. A defense expert psychiatrist testified that a person with

the level of methamphetamine and alcohol found in Preville's blood would exhibit violent, unpredictable and irrational behavior, as well as disruption of brain functions that would impair his perception of reality.

Wells testified at trial that Preville, who referred to himself and was known on the streets by the name "Chuck Norris," was one of his best friends. On June 15, 2015, after Preville's body was found, police arrested Wells and photographed injuries on the knuckles of his hands. Wells testified he could not remember exactly how he sustained the injuries; it might have been in a fight with someone else or he had a bad seizure, and he did not recall telling detective that he had been "jumped" by a group of baseball fans. A few months later, Wells told detectives that a drug dealer named Mohammed had bragged about killing Preville. On cross-examination, Wells denied hitting Preville, taking his wallet, or hurting him. He testified that he went to jail and detectives took his DNA, but charges were later dropped.

A defense investigator testified she contacted Wells after being assigned to the case in March 2016, and he explained he got his injured knuckles in a fight at a restaurant. He also told her that Mohammed bragged about having "tak[en] care of Chuck Norris."

(Lodgment No. 6, ECF No. 5-21 at 2-6.)

### III.  PROCEDURAL BACKGROUND

On February 8, 2016, the San Diego County District Attorney's Office filed an Information charging Emanuel Dunn, Jr. with one count of murder, a violation of California Penal Code § 187(a). (Lodgment No. 1, ECF No. 5-1 at 12.) The Information also alleged that Dunn had suffered a prior serious felony conviction, within the meaning of California Penal Code §§ 667(a), 668 and 1192.7(c), and a prior "strike" conviction, within the meaning of California Penal Code §§ 667(b)-(i), 1170.12 and 668. (*Id.* at 13.) Following a jury trial, Dunn was convicted of second degree murder. (Lodgment No. 2 vol. 12, ECF No. 5-15 at 6-7.) Dunn waived jury trial on his prior convictions and, following a court trial, was found to have suffered them as alleged. (*Id.* at 16-27.) He was sentenced to thirty-five years-to-life in prison. (Lodgment No. 16, ECF No. 5-16 at 15-16.)

Dunn appealed his conviction to the California Court of Appeal, which affirmed his conviction in a written opinion.  (Lodgment Nos. 3-6, ECF Nos. 5-18–5-21.)  He then filed a document entitled "Motion for Search Warrant Defects and Insufficiency (*Franks* Motion,"  which the superior court construed as a petition for writ of habeas corpus.  (Lodgment No. 9, ECF No. 5-24 at 65-67.)  The Superior Court denied the petition.  (*Id.*)  Dunn then filed a request for DNA testing in the San Diego Superior Court, which was denied.  (Lodgment No. 10, ECF No. 5-25 at 2.)  After this denial, Dunn filed a petition for writ of habeas corpus in the California Court of appeal.  (Lodgment No. 7, ECF No. 5-22.)  The Court denied the petition in a written opinion.  (Lodgment No. 8, ECF No. 5-23.)  Following that denial, Dunn filed another petition for writ of habeas corpus in the San Diego Superior Court.  (Lodgment No. 9, ECF No. 24.)  The superior court denied the petition in a written opinion.  (Lodgment No. 10, ECF No. 25.)  Dunn then filed a petition for writ of habeas corpus in the California Supreme Court, which summarily denied the petition.  (Lodgment Nos. 11-12, ECF Nos. 5-26–5-27.)

Dunn filed a habeas corpus petition pursuant to 28 U.S.C. § 2254 in this Court on January 17, 2020.  (ECF No. 1.)  Respondent filed an Answer and Memorandum in Support of the Answer on February 27, 2020.  (ECF No. 4.)  Dunn did not file a Traverse.

**IV.  ANALYSIS**

Dunn raises two grounds for relief in his Petition.  In ground one he contends his trial counsel was ineffective because she did not file a motion to suppress his phone data records and evidence found during the search of Dunn's father's home. (Pet., ECF No. 1 at 7.)  In ground two, he claims appellate counsel was ineffective for failing to raise the search warrant issues and the ineffectiveness of trial counsel.  (*Id.* at 9.)

Respondent contends the Petition is untimely.  (Answer, ECF No. 4-1 at 4-6.)  In the alternative, Respondent argues the state courts' resolution of Dunn's claims was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  (*Id.* at 6-9.)

///

A. <u>Legal Standard</u>

This Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320 (1997). Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002). In deciding a state prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable. See *Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Bell v. Cone*, 535 U.S. 685, 694 (2002). The court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case. *Id*. Additionally, the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable." *See Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). The Court may also grant relief if the state court's decision was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(2).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the last reasoned state court decision and presumes it provides the

basis for the higher court's denial of a claim or claims. *See Ylst v. Nunnemaker*, 501 U.S. 797, 805-06 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Andrade*, 538 U.S. at 75-76); *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). Clearly established federal law, for purposes of § 2254(d), means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Andrade*, 538 U.S. at 72.

B. Timeliness

Respondent contends the petition is untimely. (Answer, ECF No. 4-1 at 4-6.) Under 28 U.S.C. § 2244(d), a petitioner has one year from the date his or her conviction is final to file a petition for writ of habeas corpus in federal court pursuant to 28 U.S.C. § 2254. *See* 28 U.S.C. § 2244(d). Because Dunn did not file a petition for review in the California Supreme Court after the state appellate court affirmed his conviction, Dunn's conviction became final on November 25, 2017, forty days after the California Court of Appeal issued its decision on October 17, 2017. *Waldrip v. Hall*, 548 F.3d 729, 735 (9th Cir. 2008). Absent any tolling, the AEDPA statute of limitations began running the next day and expired on November 26, 2018.[1] Dunn did not file his habeas corpus petition in this case until January 9, 2020. (ECF No. 1.) *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (holding that a pro se prisoner's court documents are "deemed filed at the moment the prisoner delivers it to prison authorities for forwarding to the clerk of court because the prisoner is unable to control the time of delivery"); *Anthony v. Cambra*, 236 F.3d 568, 575 (9th Cir. 2000) (applying *Houston* to state court filings). The statute of limitations, however, is subject to both statutory and equitable tolling. *See* 28 U.S.C. § 2244(d)(1);

---

[1] November 25, 2018 was a Sunday and thus the following day, November 26, 2018, is the day the statute of limitations expired. See Fed.R.Civ.P. 6(a)(3). .

*Calderon v. United States Dist. Court (Beeler)*, 128 F.3d 1283, 1288 (9th Cir. 1997), *overruled on other grounds by Calderon v. United States Dist. Court (Kelly)*, 163 F.3d 530, 540 (9th Cir. 1998).

### 1. Statutory Tolling

28 U.S.C. § 2244(d)(2) provides that "[t]he time during which a properly filed application for State post-convictions or other collateral review . . . is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). Dunn filed his first habeas corpus petition in the state appellate court on March 16, 2018; it was denied on March 22, 2018 as untimely and because Dunn should have raised his claims on direct appeal, citing *In re Clark*, 5 Cal. 4th 750, 756 n. 5 (1993) and *In re Dixon*, 41 Cal. 2d 756, 759 (1953). (Lodgment No. 7, ECF No. 5-22 at 39-41.) Dunn is not entitled to any statutory tolling for this filing because the denial of the petition as untimely means it was not "properly filed." *See Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005); *Bonner v. Carey*, 425 F.3d 1145, 1149 (9th Cir. 2005).

Dunn's next filing in state court was a request for DNA testing, which he filed in San Diego Superior Court on May 11, 2018. (Lodgment No. 10, ECF No. 5-25 at 2.) Although it is not clear on what date the court denied this request, this filing also did not toll the statute of limitations because it was not a collateral attack on Dunn's conviction but rather a method for obtaining evidence to use in a future collateral attack. *See Sakellaridis v. Warden*, 2012 WL 2374562 at *5 (C.D. Cal. June 22, 2012); *see also Hodge v. Greiner*, 269 F.3d 104, 107 (2d Cir. 2001).

On June 1, 2018, Dunn filed his next habeas corpus petition in the state appellate court. (Lodgment No. 7, ECF No. 5-22.) The court denied the petition on June 8, 2018 as untimely and for other procedural reasons, (Lodgment No. 9, ECF No. 5-23), and thus Dunn is not entitled to any statutory tolling for this filing. *Pace*, 544 U.S. at 413-14; *Bonner*, 425 F.3d at 1149.

/ / /

1    Dunn then filed another habeas corpus petition in the San Diego Superior Court on
2    October 7, 2018.  (Lodgment No. 9, ECF No. 5-24.)[2]  The superior court denied this
3    petition as untimely on January 3, 2019.  (Lodgment No. 10, ECF No. 5-25.)  Dunn is not
4    entitled to any statutory tolling for this filing because it was not "properly filed." *Pace*,
5    544 U.S. at 413-14; *Bonner*, 425 F.3d at 1149.  In addition, he is not entitled to any
6    statutory tolling for his final state court filing because the statute of limitations expired on
7    November 26, 2018, eight months before he filed his final state court habeas corpus
8    petition in the California Supreme Court on July 31, 2019.  (Lodgment No. 11, ECF No.
9    5-26.)

### 2.  Equitable tolling

The statute of limitations under AEDPA "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010).  "To be entitled to equitable tolling, [Petitioner] must show '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Lawrence v. Florida*, 549 U.S. 327, 336-37 (2007), quoting *Pace*, 544 U.S. at 418.  Equitable tolling is unavailable in most cases, and "the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule." *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002).

Dunn does not make any factual allegations which establish he has been pursuing his rights diligently, or that "some extraordinary circumstance stood in his way." *Lawrence*, 549 U.S. at 336-37.  Despite being aware of the substance of his claims since his 2016 trial, Dunn did not bring his claims in state court until March of 2018, close to two years later.  And the record does not contain any evidence of an "extraordinary

---

[2] A declaration in support of this petition is dated November 9, 2018, but the signature line has a date of October 7, 2018.  The Court will use the October 7, 2018 date as the earliest possible filing date that can be attributed to this filing.  *See Houston*, 487 U.S. at 276.

circumstance" which prevented Dunn from bringing his claims in a timely manner. Accordingly, he is not entitled to any equitable tolling.

### 3.  The Petition is Untimely

The statute of limitations for Dunn's conviction began running on November 25, 2017.  Dunn is not entitled to any statutory tolling, and the statute of limitations expired on November 26, 2018.  He did not file his petition in this case until January 9, 2020.  The petition is therefore untimely.  The Court will nevertheless address the merits of Dunn's claims, below.

### C.  Ineffective Assistance of Trial Counsel

In his first claim, Dunn alleges that his trial counsel was ineffective because she did not challenge the validity of the search warrants for phone data records and Dunn's car.  (Pet., ECF No. 1 at 6-9, 15-24.)  Respondent contends the state court's resolution of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  (Answer, ECF No. 4-1 at 6-7.)

Dunn raised this claim in the habeas corpus petition he filed in the California Supreme Court, which summarily denied the petition.  (Lodgment No. 11, ECF No. 5-26.)  Accordingly, this Court must "look through" to the last reasoned state court decision addressing the claim as the basis for analysis.  *Ylst*, 501 U.S. at 805-06.  In this case, the last reasoned decision is the San Diego Superior Court's order denying Dunn's October 7, 2018 habeas corpus petition. (Lodgment No. 10, ECF No. 5-25.)  The superior court denied Dunn's ineffective assistance of counsel claim as untimely.  (*Id.*)  Thus, because the state court did not "furnish a basis for its reasoning," this Court must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law.  *Delgado*, 223 F.3d at 982; *Himes*, 336 F.3d at 853.

To establish ineffective assistance of counsel, a petitioner must first show his attorney's representation fell below an objective standard of reasonableness.  *Strickland v. Washington*, 466 U.S. 668, 688 (1984).  "This requires showing that counsel made

errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687.  He must also show he was prejudiced by counsel's errors.  *Id*. at 694.  Prejudice can be demonstrated by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.; *see also Fretwell v. Lockhart*, 506 U.S. 364, 372 (1993).  Further, *Strickland* requires "[j]udicial scrutiny of counsel's performance . . . be highly deferential." *Id*. at 689.  There is a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id*. at 686-87.  The Court need not address both the deficiency prong and the prejudice prong if the defendant fails to make a sufficient showing of either one.  *Id*. at 697.

There are three search warrants at issue: warrant number 49922, which was issued for phone data related to phone number (619) 552-0696 (Dunn's phone); warrant number 50203, which was issued for phone data related to phone number (619) 727-0884 (a phone belonging to Adam Gates, an associate of Dunn's); and warrant number 50014, which was issued for a Cadillac associated with Dunn. (Pet., ECF No. 1 at 27-50.)  Officer Juan Cisneros authored the affidavits in support of all three search warrants. (Pet., ECF No. 1 at 25-52; Lodgment No. 7, ECF No. 5-22 at 65-70.)  Dunn claims trial counsel was ineffective because she did not challenge the search warrants on grounds that Cisneros included false information in the affidavits.  He contends counsel should have filed a motion pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) to suppress the evidence gathered from the warrants.  The Supreme Court has described the inquiry under *Franks* as follows:

> There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant.  To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine.  There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.  They should point out specifically the portion of the warrant affidavit that is claimed to be

|   |   |
|---|---|
| 1 | false; and they should be accompanied by a statement of supporting reasons. |
| 2 | Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.  Allegations of |
| 3 | negligence or innocent mistake are insufficient.  The deliberate falsity or |
| 4 | reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant.  Finally, if these |
| 5 | requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient |
| 6 | content in the warrant affidavit to support a finding of probable cause, no |
| 7 | hearing is required.  [footnote 8 omitted].  On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth |
| 8 | and Fourteenth Amendments, to his hearing.  Whether he will prevail at that |
| 9 | hearing is, of course, another issue. |

*Franks*, 438 U.S. at 171-72.

Cisneros stated in his affidavits in support of the warrants that when he and Officers Booth and Bellati arrived at the location where Preville's body had been dumped, bloody pages of "The Final Call" newspaper were found "under the decedent's buttocks."  (Pet., ECF No. 1 at 33, 46.)  Dunn claims Cisneros's statement that the newspaper was found underneath Preville's body was false because Shanae Hymon, who discovered the body, testified the newspapers were near Preville's body but not touching it.  (*Id.*; Lodgment No. 2 vol. 5, ECF No. 5-8 at 38-39, 46-47.)  Specifically, she testified the newspapers were "between [Preville's] legs," and "towards the foot, one on the right side and one on the left."  (Lodgment No. 2 vol. 5, ECF No. 5-8 at 38-39, 46-47.)

As Officer Booth's trial testimony points out, however, Preville's body was moved in order to administer aid.  Booth testified that "the newspapers were in the [parking] stall" and that when he moved the body "[it] ended up on top of those papers."  (*Id*. at 78.)  Given this, counsel could have reasonably concluded it would be difficult if not impossible to establish Cisneros's statement regarding the location of the newspaper was deliberately false or was made with reckless disregard for the truth rather than simply an honest mistake, perhaps because he saw Preville's body after it had been moved on top of the newspapers.  Counsel is not required to bring frivolous motions and failing to do so

/ / /

does not constitute ineffective assistance. *Turner v. Calderon*, 281 F.3d 851, 872 (9th Cir. 2002).

Moreover, even if counsel can be faulted for failing to bring a *Franks* motion, Dunn has not established he was prejudiced by any such failure on counsel's part because he has not shown the motion would have been successful. *Strickland*, 466 U.S. at 694. Even assuming counsel could have established that Cisneros's statement about the location of the newspaper was deliberately false or made with reckless disregard for the truth, *Franks* requires the state court to evaluate whether, absent the false information, sufficient probable cause would still have existed to issue the warrant. *Franks*, 438 U.S. at 171-72. Whether the bloody newspaper was underneath Preville's body or only near it was not material to the determination whether probable cause existed to issue the warrants. The bloody newspaper was an obvious piece of evidence which was collected and tested. It was the presence of Dunn's fingerprint on the bloody newspaper which provided the link between Preville's body and Dunn and which formed the basis for the probable cause determination for the warrants, not the actual location of the newspaper at the scene. (*See* Pet., ECF No. 1 at 25-52.)

In addition, counsel's decision not to challenge the warrant for the Cadillac was not objectively unreasonable. *Strickland*, 466 U.S. at 687-88. Once police identified Dunn as a suspect from the newspaper fingerprint, they located the Cadillac registered in his name. (*Id.* at 27-48.) The car had been repossessed and was sitting in a lot, ready to be sold. (*Id.*) As appellate counsel noted, Dunn could not challenge the search of the car because it had been repossessed and he no longer owned it. (*Id.* at 48.) "[I]n order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable . . . ." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998), citing *Rakas v. Illinois*, 439 U.S. 128, 143-44 (1978); *see United States v. Huffhines*, 967 F.2d 314, 318 (9th Cir. 1992) (stating there is no reasonable expectation of privacy in a motel room after the rental period has expired and the manager has repossessed the room). As previously

noted, failing to bring a frivolous motion does not constitute ineffective assistance. *Turner*, 281 F.3d at 872. And, because the motion would have been frivolous, Dunn has not established he was prejudiced by counsel's decision not to challenge the search of the Cadillac. *Strickland*, 466 U.S. at 694.

Dunn has not established counsel was ineffective for failing to challenge the search warrants in this case. Thus, the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. *Yarborough*, 540 U.S. at 4. He is therefore not entitled to relief as to this claim.

### D.  Ineffective Assistance of Appellate Counsel

Dunn argues appellate counsel was ineffective when she failed to argue his trial counsel's failure to challenge the search warrants was ineffective assistance of counsel. Pet., ECF No. 1 at 9, 21-24.) Like his ineffective assistance of trial counsel claim, Dunn raised this claim in the habeas corpus petition he filed in the California Supreme Court, which summarily denied the petition. (Lodgment No. 7, ECF No. 5-22.) Accordingly, this Court must "look through" to the last reasoned state court decision addressing the claim as the basis for analysis, which is the San Diego Superior Court's order denying Dunn's October 7, 2018 habeas corpus petition. *Ylst*, 501 U.S. at 805-06. The superior court denied Dunn's ineffective assistance of counsel claim as untimely. (Lodgment No. 10, ECF No. 5-25.) Thus, because the state court did not "furnish a basis for its reasoning," this Court must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *Delgado*, 223 F.3d at 982; *Himes*, 336 F.3d at 853.

Ineffective assistance of appellate counsel claims are subject to *Strickland*'s standard of review. Dunn must first show that his appellate counsel's performance was objectively unreasonable, "that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them." *Smith v. Robbins*, 528 U.S. 259, 285 (2000). Dunn must also show "a reasonable probability that, but for his

/ / /

counsel's unreasonable failure . . . , he would have prevailed on his appeal." *Id.* at 285-86. As the Ninth Circuit has noted:

> These two prongs partially overlap when evaluating the performance of appellate counsel. In many instances, appellate counsel will fail to raise an issue because she foresees little or no likelihood of success on that issue; indeed, the weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy . . . . Appellate counsel will therefore frequently remain above an objective standard of competence (prong one) and have caused her client no prejudice (prong two) for the same reason-because she declined to raise a weak issue.

*Bailey v. Newland*, 263 F.3d 1022, 1028 (9th Cir. 2001), quoting *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989); *see also Turner v. Calderon*, 281 F.3d 851, 872 (9th Cir. 2002) (quoting *Gustave v. United States*, 627 F.2d 901, 906 (9th Cir. 1980) and stating that "to be constitutionally effective, '[c]ounsel need not appeal every possible question of law'").

Appellate counsel's performance was not ineffective. As discussed above, trial counsel reasonably concluded that a *Franks* challenge to the warrants would not be successful and Dunn has not shown he was prejudiced by the failure to bring a *Franks* motion. Thus, appellate counsel reasonably concluded there was "little or no likelihood of success on that issue." *Bailey*, 263 F.3d at 1028. And, because the issue was not likely to succeed on appeal, Dunn has not established he was prejudiced by appellate counsel's actions. *Id.* Accordingly, the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. *Yarborough*, 540 U.S. at 4. Dunn is not entitled to relief as to claim two.

## V. CONCLUSION

For the foregoing reasons, the Petition is **DISMISSED** as untimely and, in the alternative, **DENIED** on the merits. Rule 11 of the Rules Following 28 U.S.C. § 2254 require the District Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, 28 U.S.C. foll. § 2254 (West 2019). A COA will issue when the petitioner makes a "substantial showing of the denial of a

1  constitutional right."  28 U.S.C. § 2253 (West 2019); *Pham v. Terhune*, 400 F.3d 740,
2  742 (9th Cir. 2005).  A "substantial showing" requires a demonstration that "'reasonable
3  jurists would find the district court's assessment of the constitutional claims debatable or
4  wrong.'"  *Beaty v. Stewart*, 303 F.3d 975, 984 (9th  Cir. 2002) (quoting *Slack v.*
5  *McDaniel*, 529 U.S. 473, 484 (2000)).  Here, the Court concludes Dunn has not made the
6  required showing, and therefore a certificate of appealability is **DENIED**.
7      **IT IS SO ORDERED.**
8  Dated:  October 30, 2020

*(signature)*
Hon. Gonzalo P. Curiel
United States District Judge